**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | |
|---|---|
| LG ELECTRONICS INC., )<br><br>Plaintiff, )<br><br>v. )<br><br>HITACHI, LTD.; )<br>HITACHI AUTOMOTIVE PRODUCTS (USA), INC.; )<br>CLARION CO., LTD.; )<br>CLARION CORPORATION OF AMERICA; and )<br>XANAVI INFORMATICS CORPORATION, )<br><br>Defendants. )<br>_____ )<br>HITACHI, LTD.; )<br>HITACHI AUTOMOTIVE PRODUCTS (USA), INC.; )<br>CLARION CO., LTD.; )<br>CLARION CORPORATION OF AMERICA; and )<br>XANAVI INFORMATICS CORPORATION, )<br><br>Counterclaim Plaintiffs, )<br><br>v. )<br><br>LG ELECTRONICS INC., )<br><br>Counterclaim Defendant. ) | Case No. 5:07-CV-90 (DF)<br>The Honorable David J. Folsom |

**DEFENDANTS' RESPONSE TO LGE'S**
**POST-*MARKMAN*-HEARING SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF**

LGE complains[1] that its claims should not be invalidated as part of the claim construction process. LGE raises the specter of "evidentiary burdens" and the "presumption that the Patent Office performed its duties," but if the claims are indefinite (as opposed to invalid over prior art) then consideration is entirely appropriate now.  Claim construction is a matter of law—not fact, and not based on an "evidentiary burden" or presumption at trial.  If proper claim construction renders the claim indefinite or incomprehensible, then that claim is invalid.[2]  With that in mind, we address below LGE's substantive arguments.

## I.    Properly Construed, Claim 17 of the '456 Patent is Indefinite and Invalid.

Everyone agrees that step (b) of claim 17 is indefinite as written because it requires the step to be performed in response to itself: "**(b)** establishing a reproducing mode in response to the type of the audio file as **a result of the step (b)**."  '456 Patent at Col. 12:31-32. If uncorrected, the claim is invalid.  LGE argues that the flawed language is a mere typographical error and proper claim construction should correct step (b) so that it is performed "as a result of the **step (a)**."  But at the same time, LGE **admits** that the Court cannot correct the claim language if there is a reasonable debate about the proper correction based on the claim language and specification.  Specifically, in the absence of a certificate of correction,[3] the Court can correct claim language "**only if** (1) the correction is **not subject to reasonable debate** based on consideration of the claim language and the specification **and** (2) the prosecution history does not suggest a

---

[1]   LGE argues that Defendants raised new issues at the claim construction hearing, depriving LGE of a "full and fair" opportunity to respond. This argument  is demonstrably untrue.  Defendants' Motion to file this Response fully rebuts LGE's argument, and the Motion is hereby incorporated by reference.

[2]   *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1349 (Fed. Cir. 2002) ("It is not our function to rewrite [indefinite] claims to preserve their validity."); *Biomedino, LLC v. Waters Techs. Corp.* 490 F.3d 946, 950 (Fed. Cir. 2007); *Medtronic, Inc. v. Adv. Cardio. Sys., Inc.*, 248 F.3d 1303, 1313 (Fed. Cir. 2001); *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997); *Purechoice, Inc. v. Honeywell Int'l., Inc.*, No. 2:06-CV-244, 2008 WL 190317 (E.D. Tex., Jan. 22, 2008) (J. Ward).

[3]   LGE admits that no certificate of correction was filed. Ex. B, *Hearing Tr.* at 81: 8-10.

different interpretation of the claims." *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1354 (Fed. Cir. 2003). Here, the claim language is subject to reasonable debate, and cannot be corrected in claim construction.

Claim 17 has four separate steps: (a), (b), (c1), and (c2). '456 Patent at Col. 12:25-40. Step (a) determines the file type based on attribute information. *Id.* Step (c2), expressly performed after step (a),[4] determines the file type based on header information.[5] *Id.* Both steps (a) and (c2) determine the file type, upon which the reproducing mode of step (b) could be established. There are thus <u>two</u> reasonable options for correcting step (b): option (1) "establishing a reproducing mode…**as a result of the step (a)**" using attribute information; and option (2) "establishing a reproducing mode…**as a result of step (c2)**" using header information.

It is thus fundamentally unclear whether step (b) should be corrected with option (1) (before the header check) or option (2) (after the header check). Under option (2), the reproducing mode is established appropriately, after both the attribute information is checked in step (a), and the header information is checked in step (c2). With LGE's proposed correction (option (1)), the reproducing mode of step (b) could be established erroneously, because it is established before the file type is confirmed with the step (c2) header check. In other words, with option (1), step (b) is a useless step that may need to be repeated again after the step (c2) header check.

The specification underscores the debate and supports the reasonableness of the option (2) correction. In particular, the description of "establishing [a] reproducing mode" is explained "with reference to FIGS. 1 and  4." '456 Patent at Col. 5:44- Col. 7:9.  Figure 1 shows a "Disc

---

[4]    Steps (c1) & (c2) are performed after the extension is examined "as a result of step (a)."   '456 Patent at Col. 12:35-40.

[5]    Dependent claims 18 and 19 explicitly confirm that the result of step (c2) discriminates whether a file is of the MP3 type or the text type. '456 Patent at Col. 12:41-48.

Discrimination Section" 102.   In the context of Figure 4, the disc discrimination section 102 (of Figure 1) examines the attribute information in step 402 and the reproducing mode is subsequently established in step 403.  *Id.* at Col. 5:45-53; Figure 4.  There is no teaching of a step (c2) header check *after* the reproducing mode is established in Figure 4, or in any other part of the specification to support option (1).  The specification is silent as to when the header check of step (c2) is performed, if at all, in the context of  "establishing a reproducing mode" and Figure 4.  Option (2) is thus reasonable in view of both the claim language and the specification.[6]

As shown above, the proper correction of step (b) is at least subject to reasonable debate and this Court therefore cannot just "correct" the claim language as requested by LGE.  Because all parties agree the claim makes no sense as written, the claim is invalid as incurably indefinite under Section 112.

## II.   Properly Construed, Claim 21 of the '096 Patent is Indefinite and Invalid.

LGE argues that there is some structure in the specification generating a pixel clock, and so the claimed functions of claim 21 should be interpreted to meet that structure to render the claim valid.  But the proper procedure for construing a means-plus-function limitation is to first identify the claimed function using traditional tools of claim construction, and then to determine the structure corresponding to the identified function.  *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1330 (Fed. Cir. 2003)*; see also* D.I. 48 (Defs' Opening Cl. Constr. Br.) at p. 6.

The question is whether the '096 patent specification discloses structure that corresponds to the function of "generating a pixel clock signal" *and* whether such structure meets the rest of

---

[6]   LGE argues that step (b) follows step (a) in the recitation of the claim and therefore step (b) must be "a result of the step (a)."  LGE Supp. Br. at 3.  But absent other evidence, the order of the steps does not matter.  *See Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1345 (Fed. Cir, 2008) ("although a method claim necessarily recites the steps of the method in a particular order, as a general rule the claim is not limited to performance of the steps in the order recited, unless the claim explicitly or implicitly requires a specific order.")

the claim.  Specifically, the "frame buffer output control means" must be responsive to the pixel clock signal, and that same pixel clock signal must be generated by the "image size/position control means."  If LGE has not or cannot identify specific structure in the specification which satisfies both limitations of claim 21 of the '096 patent, the Court must hold claim 21 invalid under 35 U.S.C. § 112.  "If the specification is not clear as to the structure that the patentee intends to correspond to the claimed function, then the patentee has not paid that price [required by Section 112 to clearly link the disclosed structure with the claimed function] but is rather attempting to claim in functional terms unbounded by any reference to structure in the specification.  Such is impermissible under the statute."  *Med. Instr. and Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1211 (Fed. Cir. 2003).[7]

LGE has repeatedly tried to find supporting structure in the specification for claim 21 of the '096 patent.  In fact, LGE has now advanced three different, mutually-inconsistent theories for where that structure is located.  All three theories are wrong.

> **1.      LGE's first argument that the "image size/position control means" of claim 21 is *responsive* to the "pixel clock signal" is wrong.**

LGE first argued that the "image size/position control means" of claim 21 does not <u>generate</u> the pixel clock signal, but instead <u>is responsive to</u> the pixel clock signal.  *See* D.I. 47 (LGE Op. Cl. Constr. Br.) at pp. 54-55.  But as explained in Defendants' Opening Brief (D.I. 48 at pp. 6-7) and at the *Markman* hearing (Defendants' slides 110-115; *Hrg. Tr.* at 121:7-124:15), claim 21 requires that the "image size position control means" generates the pixel clock signal.  Further supporting the difference between the claim limitations and the disclosure in the specification,

---

[7]     *See also Maurice Mitchell Innovations, L.P. v. Intel Corp.* 249 Fed. Appx. 184, 188 (Fed. Cir. 2007); *Biomedino, LLC,*  490 F.3dat 952 ; *Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc*., 412 F.3d 1291, 1302 (Fed. Cir. 2005).

LGE admitted that "image size position control unit 39" of the '096 patent **<u>does not</u>** generate a pixel clock signal.  D.I. 47 (LGE Op. Cl. Constr. Br.) at pp.. p. 55.  LGE's supplemental brief concedes that the functional language is "generating a pixel clock signal" and that the corresponding means clause is the "image size/position control means."  LGE Post-Hearing Supp. Br. at 5.  This concession proves that LGE's proposed construction of "image size/position control means"is wrong.

    **2.**    **LGE's second argument that "pixel clock generator 28" is the corresponding structure for "generating a pixel clock signal" is also wrong.**

In its Opening Brief, LGE argued in the alternative that the "pixel clock generator 28" was the corresponding structure for the "generating a pixel clock signal" function.[8]  As explained in Defendants' Opening Brief (D.I. 48 at 7-8), Sur-Reply Brief (D.I. 63-2 at 5-6) and at the *Markman* hearing (Defs' slides 119-120; *Hrg. Tr.* at 125:2-126:9), "pixel clock generator 28" cannot be the corresponding structure because it is not part of the "image size/position control means" of claim 21.  Also, the signal generated by "pixel clock generator 28" is not input into the "frame buffer output control means," which claim 21 clearly requires must be "responsive to" the pixel clock signal.

LGE's new supplemental brief implies that the signal generated by "pixel clock generator 28" is input into "flat panel timing generator 29", and that this same signal is fed out of "flat panel timing generator 29" on line 41.  LGE Supp. Br. at 6.[9]   This also cannot be correct, because no signal generated by or derived from "pixel clock generator 28" is passed through to the "frame buffer output control means."  *See* Defs' Sur-Reply Br. (D.I. 63-2 at 5-6); Defs' slides

---

[8]    Notably, LGE had never before identified that structure as part of the "image size/position control means" of claim 21 in its Joint Patent Rule 4-5(d) Claim Chart, D.I. 64-2 at p. 33, or anywhere else.

[9]    LGE has also made this argument in its briefings (D.I. 55 (LGE Reply Br.) at 48-49) and at the *Markman* Hearing (Ex. B, *Hearing Tr.* at 114:14-24).

119-120; *Hearing. Tr.* at 125:2-126:9.  Line 41 has nothing to do with "pixel clock generator 28"—it is output from "programmable oscillator 180", which has a single input on line 37 from Microprocessor 36.  *See* Defs' Sur-Reply Br. (D.I. 63-2 at 5-6).  Thus, "pixel clock generator 28" generates no pixel clock to which the "frame buffer output control means" is responsive, as required by claim 21.

> **3.     LGE's third argument that "oscillator 180" is the corresponding structure for "generating a pixel clock signal" is also wrong.**

LGE's supplemental brief advances a position on the "pixel clock signal" structure not previously raised in its 112 pages of briefing.  LGE identifies "oscillator 180", within "flat panel timing generator 29", as the structure within the "image size/position control means" that allegedly generates the pixel clock signal.  But oscillator 180 of "flat panel timing generator 29" cannot correspond to the function of "generating a pixel clock signal" for at least two reasons.

First, everyone agrees that "flat panel timing generator 29" (including oscillator 180) corresponds to the "timing control means," not the "image size/position control means."  *See* D.I. 64-2 (Ex. 1 to Joint P.R. 4-5(d) Chart) at p. 37.  Different claim terms in the same claim should not be construed to have the same meaning.  *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.,* 381 F.3d 1111, 1119-20 (Fed. Cir. 2004) ("when an applicant uses different terms in a claim it is permissible to infer that he intended his choice of different terms to reflect a differentiation in the meaning of those terms.") (citing cases)*; s*ee *also Default Proof Credit Card Sys., Inc.*, 412 F.3d at 1299-1300 .  Because claim 21 requires that the "image size/position control means" generates this signal—not the "timing control means"—oscillator 180 of "flat panel timing generator 29" cannot be the structure corresponding to the "generating a pixel clock signal" function.

Second, the signal generated by oscillator 180 of "flat panel timing generator 29" is already identified by claim 21 as a "first clock signal for driving said flat panel display."  The signal generated by oscillator 180 of "flat panel timing generator 29" is carried on line 41 to the "image size/position control means", and also carried on line 32 (corresponding to line 181 in Fig. 7) to the flat panel interface module.  '096 Patent at Col. 20, lines 57-61.  A comparison of the claim language to the specification confirms that the signal on line 32 is "a first clock signal for driving said flat panel display."  '096 Patent at Col 6:65-7:2; Defs' slides at 133.  Different claim terms are presumed to have different meanings.  *Innova/Pure Water,* 381 F.3d at 1119-20. The "first clock signal" cannot be the same signal as the "pixel clock signal," and the signal generated by oscillator 180 of "flat panel timing generator 29" therefore cannot be the structure for "generating a pixel clock signal."

## CONCLUSION

For these reasons, Defendants respectfully request that this Court adopt their proposed constructions for each of the disputed terms of the patents-at-issue and conclude that claim 17 of the '456 patent and claim 21 of the '096 patent are invalid, as a matter of law, under 35 U.S.C. § 112.

Dated:  August 8, 2008                     Respectfully submitted,

                                           By: /s/ Eric H. Findlay

                                           Eric H. Findlay
                                           State Bar No. 00789886
                                           RAMEY & FLOCK
                                           100 East Ferguson
                                           Suite 500
                                           Tyler, TX  75702
                                           Telephone:  (903) 597-3301
                                           Facsimile:  (903) 597-2413
                                           E-Mail:  efindlay@rameyflock.com

                                           William A. Streff, Jr., P.C.
                                           Paul R. Steadman, P.C.
                                           Craig D. Leavell
                                           KIRKLAND & ELLIS LLP
                                           200 E. Randolph Drive
                                           Chicago, IL  60601
                                           Telephone:  (312) 861-2000
                                           Facsimile:  (312) 861-2200
                                           E-Mails:
                                           wstreff@kirkland.com
                                           psteadman@kirkland.com
                                           cleavell@kirkland.com

                                           *Attorneys for Hitachi, Ltd.,*
                                           *Hitachi Automotive Products (USA), Inc.,*
                                           *Clarion Co., Ltd.,*
                                           *Clarion Corporation of America, and*
                                           *Xanavi Informatics Corporation*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the DEFENDANTS' RESPONSE TO LGE'S POST-MARKMAN-HEARING SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF was filed electronically in compliance with Local Court Rule CV-5(a) on August 8, 2008.  As such, these documents were served on all counsel who are deemed to have consented to electronic service. L.R. CV-5(a)(3)(A).

<u>/s/ Eric H. Findlay</u>
Eric H. Findlay